UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA M. BROWN,
on behalf of M.S.M., a minor,

      Plaintiff,

v.                                          Case No. 1:10-cv-252
                                                Hon. Robert J. Jonker
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for social security income (SSI).

Plaintiff was born on May 20, 2002 (AR 85).[2] Plaintiff's application for SSI was filed on September 12, 2006 (AR 9). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) held a hearing, reviewed plaintiff's claim *de novo*, and entered a decision denying the claim on May 18, 2009 (AR 9-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the court for review.

---

[1] Although Christina M. Brown is the nominal plaintiff, the term "plaintiff" herein shall refer to her minor daughter M.S.M, the real party in interest. The court notes that the Administrative Law Judge's decision refers to the minor, M.S.M, as "the claimant."

[2] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). An individual under the age of 18 shall be considered disabled if the child

> has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or

2

> which has lasted, or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

> There is a three step process in determining whether a child is "disabled" under the new definition set forth in the Act. First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924.

*Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). *See also*, *Kelly v. Commissioner of Social Security*, 314 Fed. Appx. 827, 832 (6th Cir. 2009) (listing framework for a three-step inquiry).

The regulations provide separate tests for determinations at step three of the process. 20 C.F.R. § 416.924(d). First, "[i]n order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. *See* 20 C.F.R. § 416.924(a)." *Elam*, 348 F.3d at 125. Second, a child, may have an impairment that is "medically equivalent" to a listed impairment, "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Third, if a child has a severe impairment that does not meet or medically equal a listed impairment, the Commissioner will determine whether the impairment results in limitations which functionally equal the listings. 20 C.F.R. § 416.926a.

The criteria for determining functional equivalence to a listing is based upon six "domains" of functioning: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To establish "functional equivalence" of a listed impairment, the claimant has to show either "marked" limitations in two

3

domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Under the regulations, a "marked limitation" in a domain "interferes seriously with your ability to independently initiate, sustain, or complete activities," while an "extreme limitation" in a domain 'interferes very seriously with your ability to independently initiate, sustain, or complete activities." *See* § 416.926a(e)(2)(i) and (3)(i).

## II. ALJ'S DECISION

Following the three steps, the ALJ first found that plaintiff was a pre-schooler on September 12, 2006, the date the application was filed, and is currently a school-age child under the regulations (20 C.F.R. § 416.926a(g)(2)) (AR 12). Plaintiff has not engaged in substantial gainful activity at any time relevant to the decision (AR 12). The ALJ then found that plaintiff suffered a severe impairment of attention deficit hyperactivity disorder (ADHD) (AR 12).

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets, medically equals or functionally equals any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12). The ALJ specifically found that plaintiff did not meet or equal the requirements of Listing 112.11 (ADHD) because she did not have marked inattention, marked impulsiveness and marked hyperactivity (AR 12). The ALJ also found that plaintiff did not have an impairment or combination of impairments that functionally equals the listings. In reaching this determination, the ALJ reviewed the six domains and found: that plaintiff had "a marked limitation" in attending and completing tasks; "less than marked limitations" in acquiring and using information and interacting and relating with others; and "no limitation" in in moving about and manipulating objects, caring for yourself, and health and physical well-being (AR 13-19). The ALJ

4

concluded that plaintiff was not under a "disability" as defined in the Social Security Act since filing the application for SSI on September 12, 2006 (AR 19).

## III. ANALYSIS

Plaintiff raised two issues on appeal:

**A. The Commissioner's decision that plaintiff does not functionally equal a listing impairment is not supported by substantial evidence.**

Plaintiff contends that the ALJ erred in finding that she had "less than marked limitations" in the domains of interacting and relating with others and acquiring and using information.

### 1. Interacting and relating with others

This domain considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The regulations include "age group descriptors" for use in evaluating this domain. The relevant descriptors for plaintiff are as follows:

> (iii) Preschool children (age 3 to attainment of age 6). At this age, you should be able to socialize with children as well as adults. You should begin to prefer playmates your own age and start to develop friendships with children who are your age. You should be able to use words instead of actions to express yourself, and also be better able to share, show affection, and offer to help. You should be able to relate to caregivers with increasing independence, choose your own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. You should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what you say most of the time.

> (iv) School-age children (age 6 to attainment of age 12). When you enter school, you should be able to develop more lasting friendships with children who are

your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iii) and (iv).

The regulations also include examples of limited functioning in this domain that children may have:

> (3) Examples of limited functioning in interacting and relating with others. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
>
> > (i) You do not reach out to be picked up and held by your caregiver.
> >
> > (ii) You have no close friends, or your friends are all older or younger than you.
> >
> > (iii) You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
> >
> > (iv) You have difficulty playing games or sports with rules.
> >
> > (v) You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
> >
> > (vi) You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a(i)(3).

Referring to these regulatory guidelines, the ALJ found that plaintiff had a "less than marked limitation" in this domain, reasoning that:

> Although the claimant sometimes has problems getting along with others she does have friends. In January 2009 it was noted in the Student Study Team meeting that the claimant asked for help when needed (Exhibit 10E [AR 127-30]). In December 2006 the claimant's Head Start teacher averred the claimant had no problems in interacting and relating with others (Exhibit 3E [95-102]).

(AR 16).

Plaintiff contends that she has at least a marked limitation in this domain. In support of this contention, plaintiff relies on testimony from her mother that: plaintiff pushed the neighbor children; while plaintiff has friends they do not visit because she will fight and become aggressive with them; plaintiff has "fits" that last up to four hours; that plaintiff had three or four "tantrums" or fits during the school year (but these are undocumented because the school does not implement suspensions or detentions) (AR 30, 35-36). In a daily activities questionnaire, plaintiff's mother stated that while plaintiff has playmates, she has "problem behavior": "She fights all the time, has stolen thing [sic] on more than 10 occasions, from stores & other people & houses. Kicks animals & throws them" (AR 103). Plaintiff also cites the opinion of Dr. William Weill, the medical expert (ME) at the administrative hearing, who testified that tantrums lasting three to four hours (as testified to by plaintiff's mother) would be consistent with "Appositional [sic] Defiant Disorder" (AR 44).

In addition, plaintiff points to her initial evaluation with a psychiatrist Marla J. Warren, M.D. on March 14, 2006. At that time plaintiff was aged three years and nine months, had an educational history of being "kicked out of three pre-schools" and was currently attending a Head

7

Start lab program at Central Michigan University (AR 153, 155).[3] Plaintiff's mother reported aggressive behavior, i.e., that plaintiff bites, hits and kicks when angry, "sometimes squeezes animals too tight," and "sometimes bites herself or hits herself in the head" (AR 153). Based on her examination, Dr. Warren diagnosed plaintiff with ADHD, and assigned her a Global Assessment of Functioning (GAF) score of 60 (AR 156), which indicated, in the doctor's opinion, that plaintiff had "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34.[4]

Plaintiff also cites a subsequent office visit on May 25, 2006, at which time Dr. Warren noted that plaintiff (then age 4) was "somewhat uncooperative and oppositional," and did not "really sit . . . nor pay attention to anything for a very long period of time" during the visit (AR 148). Nevertheless, the doctor found her affect euthymic, that she smiles easily, that she had logical and sequential thought processes, fair insight and fair judgment (AR 148). Based on this record, plaintiff contends that these aggressive and defiant behaviors "portray a child who cannot form a relationship with children her own age, acts out with impulsivity and violence, is uncooperative, and

---

[3] The court notes that plaintiff also had a history of "trauma and losses," with the doctor noting that plaintiff had been in foster care with her maternal great-grandmother for one and one-half years "because of issues of Mom abusing drugs" (AR 155).

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. *DSM-IV-TR* at pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id*. at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

has no consideration for others." Plaintiff's Brief at p. 7. In summary, plaintiff has pointed out some evidence of behavior which indicates some limitations on her ability to interact and relate with others.

However, despite the evidence presented by plaintiff, the court concludes that substantial evidence supports that ALJ's decision that plaintiff had less than marked limitations in the domain of interacting and relating with others. While Dr. Weill agreed with plaintiff's counsel that a tantrum lasting three to four hours could be considered "appositional [sic] defiant behavior," he opined that plaintiff had "less than marked" limitations in this domain (AR 43). The record reflects that plaintiff exhibited cooperative behavior at other office visits with Dr. Warren. For example, on November 9, 2006, plaintiff's mother reported to Dr. Warren that plaintiff was doing well at school while on medication and that her teacher did not have any complaints (AR 139). At that time, the doctor found plaintiff as cooperative, "willing to go see the nurse," and "willing to turn over a piece of candy for Mom to hold so that she can eat it later in the day" (AR 139). In addition, the records reflect that from March 2006 through November 2006, Dr. Warren consistently assigned plaintiff a GAF score of 60 (AR 141, 144, 147-48, 151, 156). While plaintiff exhibited functional limitations in this domain, her behavior did not rise to the level of a marked limitation as contemplated by the regulations. *See, e.g., Sanchez v. Barnhart*, 467 F.3d 1081, 1084 (7th Cir. 2006) ("observing that [the minor claimant] is sometimes difficult or aggressive in school, but that is hardly unusual, and indeed were it not for some of the psychological evidence one would think her rather average despite her unfortunate childhood experience").

Furthermore, plaintiff's school records do not reflect marked limitations in this domain. In an agency questionnaire from December 2006, plaintiff's teacher indicated that plaintiff

9

had no problems observed in the domain of interacting and relating with others, that her functioning appears age-appropriate and that it has not been necessary to implement behavior modification strategies for her (AR 98). The teacher commented that plaintiff was a very pleasant child, eager to learn and plays with others (AR 101). The only concern noted was that she attended school a few times "where she appeared to be heavily under the influence of something (i.e., medication) that made her act in a very unusual way" (hyper focused, unable to focus, unable to hold a conversation) (AR 101).[5] A Student Study Team Checklist from November 2008 stated that plaintiff was in a reading group and that she "never hesitates to ask for help" (AR 123). A similar checklist from January 2009 stated that plaintiff "Expresses when she needs help!" (AR 130).

Substantial evidence supports the ALJ's finding that plaintiff has less than marked limitations in this domain. Accordingly, plaintiff's claim on this issue should be denied.

### 2. Acquiring and using information

This domain considers "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). The relevant age group descriptors for plaintiff are as follows:

> (iii) Preschool children (age 3 to attainment of age 6). When you are old enough to go to preschool or kindergarten, you should begin to learn and use the skills that will help you to read and write and do arithmetic when you are older. For example, listening to stories, rhyming words, and matching letters are skills needed for learning to read. Counting, sorting shapes, and building with blocks are skills needed to learn math. Painting, coloring, copying shapes, and using scissors are

---

[5] The court notes some evidence of non-compliance with medical treatment. On September 13, 2006, the Head Start program called the doctor's office over "medication and parenting issues," describing plaintiff as hyperfocused and glassy eyed (AR 143). On September 18, 2006, plaintiff's mother called the doctor's office to report that she had left a bottle of Tenex in Grand Rapids and requested a prescription (AR 142). She was advised to contact the pharmacy and request a re-fill from the prescription which was written on July 6, 2006 (AR 142). The doctor's office noted in an addendum that plaintiff's mother had never turned in the script written on July 6th (AR 142).

10

some of the skills needed in learning to write. Using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories allows you to acquire and share knowledge and experience of the world around you. All of these are called "readiness skills," and you should have them by the time you begin first grade.

(iv) School-age children (age 6 to attainment of age 12). When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iii and iv).

The regulations also include examples of limited functioning in this domain that children may have:

(3) Examples of limited functioning in acquiring and using information. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

(i) You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.

(ii) You cannot rhyme words or the sounds in words.

(iii) You have difficulty recalling important things you learned in school yesterday.

11

>> (iv) You have difficulty solving mathematics questions or computing arithmetic answers.
>
> (v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3).

Referring to these regulatory guidelines, the ALJ found that plaintiff had a "less than marked limitation" in this domain, reasoning that:

> The claimant is behind in math and reading but is not receiving any special education services. In December 2006 the claimant's Head Start teacher stated the claimant had no limitations in this domain (Exhibit 3E [AR 95-102]).

(AR 14-15).

Plaintiff relies on a Sylvan Learning Center evaluation dated May 12, 2009 (AR 203-09)[6] and a February 2010 Individualized Education Plan (IEP) (docket no. 12-3) as evidence that she has marked limitations in this domain. However, the court cannot consider these documents in reviewing the ALJ's decision because the documents were not part of the administrative record in this case. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). The court will address plaintiff's new evidence on this issue in § III. B., *infra*.

---

[6] Defendant refers to this report as dated May 21, 2009. Defendant's Brief at p. 16 (docket no. 13). It appears to the court that this is an error. The copy in the administrative record is dated May 12, 2009 (AR 207).

12

Substantial evidence supports the ALJ's finding that plaintiff has less than marked limitations in the domain of acquiring and using information. Accordingly, plaintiff's claim should be denied.

### B. The administrative record is incomplete as there is new and material evidence and good cause exists for failing to obtain this evidence prior to hearing.

Plaintiff seeks a sentence-six remand for the purpose of reviewing new evidence with respect to whether plaintiff has marked or extreme limitations in the domain of acquiring and using information. Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

As an initial matter, the Sylvan Learning Center evaluation from May 12, 2009 is not new evidence, because this document existed before the ALJ entered his decision on May 18, 2009. *See Ferguson v. Commissioner of Social Security*, -- F.3d --, 2010 WL 5185848 at *6 (6th Cir. Dec. 23, 2010) ("For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in

13

existence or available to the claimant at the time of the administrative proceeding'") (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). There is no indication that plaintiff requested the ALJ to keep the record open to include the evaluation. Accordingly, this document is not "new evidence" subject to a sentence-six remand.

The February 9, 2010 IEP is new evidence for purposes of a sentence-six remand. The issue before the court is whether this document is material and whether good cause exists for the Commissioner to review it. In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Under the facts in this case, the court concludes that the February 9, 2010 IEP is not material for purposes of a sentence-six remand. The IEP indicates that plaintiff demonstrated "average to slightly below average reading skills," that "[h]er math fell in the average range and her spelling fell in the average range" and that based on the evaluation findings, plaintiff is determined to be eligible for special education services. Feb. 9, 2010 IEP at pp. 3, 10. While both the IEP evaluation and the ALJ's determination found that plaintiff was behind in math and reading, the ALJ added the qualifying language "but [plaintiff] is not receiving any special education services" (AR 15). Given the ALJ's qualifying language, it is conceivable that plaintiff's enrollment in special education classes as reflected in the IEP could have affected the finding with respect to this domain. Nevertheless, the IEP evaluation is not chronologically material, because it was completed several months after the ALJ's decision, and reflected plaintiff's condition as it existed during the following school year. "Evidence of a subsequent deterioration or change in

14

condition after the administrative hearing is deemed immaterial." *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992).

Accordingly, plaintiff is not entitled to a sentence-six remand.

**IV.  Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  January 24, 2011         /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).